**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

LANDON JAMES VEAL by and through his
General Guardian JOANNE PALMER                                    **PLAINTIFF**

**V.**                                    **CIVIL ACTION NO.**  3:19-cv-485-CWR-FKB

HINDS COUNTY, MISSISSIPPI,
SHERIFF VICTOR MASON, in His Individual Capacity
as Sheriff of Hinds County, Mississippi,
and JOHN AND JANE DOES 1 – 100                                    **DEFENDANTS**

## PLAINTIFF'S ORIGINAL COMPLAINT

### *Jury Trial Demanded*

1.      This Complaint is brought by JoAnne Palmer, mother to Landon James Veal ("Veal" or "Plaintiff"), where JoAnne Palmer is acting as General Guardian, against Hinds County, Mississippi, Sheriff Victor Mason, and John and Jane Does 1 – 100 (hereinafter, "Defendants".)

## JURISDICTION AND VENUE

2.      Subject Matter Jurisdiction is appropriate in federal court since a federal question is raised pursuant to 42 U.S.C. §1983 as well as the 8th and 14th Amendments to the United States Constitution.

3.      Venue is appropriate in this Court as all acts and/or omissions occurred in Hinds County, Mississippi, which is located within the Southern District of the United States District Court, Northern Division.

## PARTIES

4.      Landon Veal was, at all times material to this Complaint, an adult incarcerated at the Hinds County Detention Center (hereinafter, "HCDC").  Substantial acts, omissions, and

events that caused his mental incapacity took place in Hinds County, Mississippi.  At the time of the incident which gives rise to this Complaint, Veal was a 35-year old citizen of the State of Mississippi, and a pre-trial detainee incarcerated at HDCD.  Due to the injuries he received at HCDC, the Plaintiff is unable to care for himself. As a result, his mother, JoAnne Palmer ("Guardian") was appointed as Guardian. The Guardian brings this action on behalf of Landon James Veal. A true and correct copy of the order appointing JoAnne Palmer in such capacity is attached as Exhibit "A".

5.      Defendant, Hinds County, Mississippi, is located within the Southern District of the United States District Court, Northern Division.  Hinds County, by and through the Office of the Hinds County Sheriff's Department, manages and operates the HCDC. Hinds County has the responsibility for providing humane care and treatment consistent with all constitutional and American Correctional Association standards.   Defendant is subject to the in personam jurisdiction of this Court by service of process upon its Board of Supervisors, by and through the Hinds County Chancery Court Clerk, Eddie Jean Carr, who also serves as the Clerk of the Hinds County Board of Supervisors, located at the Hinds County Chancery Courthouse, 316 South President Street, Jackson, Hinds County, Mississippi 39201.

Hinds County officials and policymakers knew that the HCDC was understaffed with untrained officers as early as August 2013 when Dr. James Austin conducted his inspection of the jail.  Throughout the following years, numerous teams of experts have continued to note the jail is not adequately staffed and that the jailers are not properly trained.

6.      Defendant, Victor Mason, is the duly elected Sheriff of Hinds County, Mississippi.  Sheriff Mason is the policy maker for the Hinds County Sheriff's Department, which also includes the HCDC.  Sheriff Mason knew years prior to this incident that the HCDC

was understaffed with untrained officers. Sheriff Mason was also placed on notice about the numerous other problems at the jail including faulty cell doors, which do not lock, and the inability to protect inmates from harm. Sheriff Mason took office in January 2016 and attended numerous court hearings regarding the consent decree with the United States of America which was entered into on June 23, 2016. See *U.S. v. Hinds County*, et. al. 3:16-cv-489. Over the course of the next several years, independent expert jail consultants have continued to note the jail was not adequately staffed, that the jailers were not trained, that cell doors continued to be faulty and that inmates were not being protected from harm. Sheriff Mason ignored requests/demands to provide more jailers. Previous litigation revealed that HCDC staffed one (1) jailer per pod, which was deemed inadequate by past independent court appointed experts.  Nonetheless, for months prior to Veal's assault, records clearly showed that there were no jailers assigned to cover the individual pods and those jailers assigned elsewhere at HCDC were inadequately trained and supervised. Sheriff Mason knew that HCDC was dangerously understaffed with untrained jailers years prior to this incident and it was therefore foreseeable that this would create a dangerous environment for inmates like Veal.  Sheriff Mason's inactions created a policy at the HCDC of understaffing the jail with untrained jailers and failing to protect inmates, like Veal, from harm. Accordingly, Sheriff Mason is being sued in his individual capacity. Sheriff Mason may be served with process at his place of employment or residence.

7.    Plaintiff is ignorant as to the identities of Defendant John and Jane Does 1-100 who are unknown officers, employees, agents, and or servants of the Hinds County Sheriff's Department and/or Defendants.  Plaintiff will amend this Complaint to allege their true names and allege that each of the fictitiously named Doe Defendants are responsible in some manner for the occurrences herein alleged, and that Veal's damages, as alleged herein, were proximately

caused by their conduct.  Plaintiff, upon information and belief, asserts that the Doe Defendants were the officers, agents, servants, and employees of the Defendants herein, and were at all times acting under color of law with the permission and consent of Defendant within the course and scope of their employment.

## FACTS

8.     On or about September 18, 2018, Veal was incarcerated at HCDC.  At 8:41 p.m., while the inmates were out of their cells in C Pod, there was an incident between several inmates which led to Veal being hit in the head several times which left him unconscious. Veal suffered permanent brain damage as a result of this assault.

9.     The HCDC is comprised of three pods; A, B and C. Each pod has one guard tower and four (4) housing units numbered 1, 2, 3 and 4. Historically, each housing unit had one floor officer assigned. As shown below, every independent expert that has visited HCDC since 2013 has opined that one floor officer per separate housing unit is inadequate to protect inmates from violence. Regardless, for months, if not years, prior to this incident, Hinds County and Sheriff Mason failed to have *any* correctional officers assigned to the housing units. The inmates were left unsupervised and essentially, they policed the housing units as they saw fit.

10.     As noted in previous litigation and the expert reports, the locking mechanisms on the cell doors at the HCDC do not properly function. This results in the inmates being out of their cells, 24 hours a day, unsupervised and left to their own devices. Further, HCDC jailers fail to conduct routine safety checks to ensure that inmates are safe.

11.     Plaintiff's Counsel has obtained surveillance video from the HCDC for September 18, 2018.  The video clearly shows a jail which is out of control. Hinds County and Sheriff Mason have essentially relinquished control of the jail to the inmates. There are no guards

assigned to the floor. Inmates wander around freely, in and out of cells. There is no supervision. This is unacceptable in a jail setting and constitutes unsound correctional practice.

12.     At 8:23 p.m. on the surveillance video, inmates can be seen wrapping their faces in t-shirts to hide their faces. It was apparent that the inmates were preparing to attack other inmates. Unfortunately, there were no jailers on the floor to intercede and stop the inmates. Apparently, no one was monitoring the surveillance video either.

13.     At 8:41 p.m., the inmates charged to the opposite side of the pod. Veal was standing outside of his cell. The surveillance video shows that Veal was not bothering anyone, nor was he involved in what was going on, yet, Veal was knocked to the ground by an unknown inmate, then beaten by numerous inmates. The assault lasted several minutes, as revealed by the video.

14.     At 10:14 p.m., there was another altercation at HCDC stemming from the altercation which Veal was involved in and Officer Vincent Williams contacted the supervisor of the patrol division for support, "due to the staff shortage at [HCDC]."

15.      Veal was taken to medical to be examined. At 10:00 p.m., Veal was transported to Central Mississippi Medical Center ("CMMC") to be further evaluated.

16.     CT Scans and other tests were performed, and Veal was admitted to CMMC where he remained for several days. Veal remained very confused and minimally responsive.

17.      Eight days later, on September 26, 2018, Veal was discharged from CMMC back to HCDC with a suggestion that he continue his prescriptions of Depakote and Zyprexa.

18.     The patient notes from the HCDC medical team noted that Veal was returned to the facility with little to no movement of his extremities and that he needed complete assistance with all activities of daily living. Veal was put under medical observation to be watched.

19.     The following day it was noted that Veal had swelling to his lips, was drooling and was rolling on the floor in a soiled jumpsuit due to incontinence. Veal continued in this manner, without his medication, until he was admitted this time to University Mississippi Medical Center ("UMMC") on September 28, 2018.

20.     An MRI taken at UMMC showed extensive parenchymal micro hemorrhages that were consistent with severe traumatic brain injury. Neurological reports indicate that this is likely Veal's new normal, in other words his brain injury is permanent. UMMC started him back on the Zyprexa and Depakote. Veal remained hospitalized for several months. As a result of the assault at HCDC, Veal sustained permanent brain damage and will need medical treatment for the foreseeable future, possibly for the rest of his life.

21.     Hinds County officials, including the Board of Supervisors and Sheriff Mason, have long been aware of the dangerous, violent and poor conditions at the HCDC. Representatives from the Hinds County Sheriff's Department have regularly advised the Hinds County Board of Supervisors ("Board") about the many problems at HCDC, requesting that the problems be addressed.   In response to numerous repeat incidents of violence and inmate uprisings that have occurred at the HCDC within a three-year span of time, as well as the public outcry and media attention garnered by said incidents, the Hinds County Circuit Court entered an Order on July 23, 2013, mandating that the Hinds County Grand Jury perform an intensive and in-depth evaluation of the conditions of the Detention Center, and make its recommendations to the Court as to its findings.

22.     On September 17, 2013 the Report of the Hinds County Grand Jury was filed with the Circuit Clerk of the First Judicial District of Hinds County, wherein it determined that "the Hinds County Detention Center (HCDC) is in deplorable condition and inadequately staffed.  In

its present state, the HCDC poses major security risks to inmates, staff of the facility, visitors to the facility, and to the citizens of Hinds County.  The facility also poses a major liability risk to Hinds County."  The Report adopted the Assessment Report generated by Dr. James Austin, Ph. D; his sixteen (16) page Report prepared at the request of the Grand Jury documented numerous egregious and emergent issues in existence at the Detention Center warranting immediate correction.  *See* Report of Hinds County Grand Jury attached hereto and incorporated herein by reference as Exhibit "B".  Despite the Grand Jury Order, compliance by Hinds County officials was minimal, at best.

23.     In response to an egregious number of serious incidents that have occurred in recent years at the HCDC (many of which having taken place after the Grand Jury's Report) that have not only resulted in serious physical harm (including death) to both staff and inmates, but undue property damages, financial loss and the denial of inmates' constitutional rights, the United States Department of Justice's Civil Rights Division ("DOJ") instituted an in-depth investigation into the facility and its conditions.  On May 21, 2015 the DOJ released its findings, pursuant to the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997.  The twenty-nine (29) page Report (hereinafter, "DOJ Report") concludes that the HCDC is in violation of the Eighth and Fourteenth Amendments of the United States Constitution, outlining therein a pattern and practice of Constitutional violations and mandating the immediate implementation of very specific remedial measures.  *See* Report attached hereto and incorporated herein by reference as Exhibit "C".

24. As a result of the DOJ report, Hinds County entered into a consent Decree on June 23, 2016 with the DOJ a copy of which is attached as Exhibit "D". Hinds County agreed to, inter alia, develop policies and procedures to protect inmates from harm, hire sufficient numbers of

jailers and provide training and supervision over these jailers to ensure that inmates are protected from harm. The court appointed a group of experts to make periodic visits to the jail to ensure Hinds County was complying with the consent decree.

25. During the course of monitoring the consent decree the court held numerous hearings, both in person and telephonically. Hinds County officials, including Sheriff Mason, were present for several of these hearings. During the hearings, one of the court appointed experts would present summary testimony concerning the most recent onsite visits. Below is the list of hearings:

7/19/16- Telephone Conference, Counsel for all parties present

2/17/17- Telephone Conference Counsel, for all parties present (Judge asked the Sheriff and Hinds County Board of Supervisors be present for upcoming in-person conference)

7/10/17- Counsel for Hinds County and Sheriff present

9/20/17- Counsel for Hinds County and Sheriff present, Hinds County representative and Sheriff present

10/25/17- Counsel for Hinds County and Hinds County representative and Sheriff present

12/5/17- Counsel for Hinds County and Sheriff present and Hinds County representatives present

3/8/18- Counsel for Hinds County and Sheriff present and Hinds County Representatives present

8/29/18- Counsel for Hinds County and Sheriff present

11/30/18- Counsel for Hinds County and Sheriff present (teleconference)

1/15/19- Counsel for Hinds County and Sheriff present, Hinds County Representatives and Sheriff Present

5/21/19- Counsel for Hinds County and Sheriff present, Hinds County Representatives and Sheriff Present.

As a result of attending the hearings, Hinds County and Sheriff Mason had firsthand

knowledge, prior to Veal's incident, about the unconstitutional conditions of confinement at the HCDC.

26. In 2018, conditions remained poor at HCDC, if not worse. The Court Appointed Monitoring Report filed in November of 2018, which is attached as Exhibit "E", shows that the already low staffing numbers had dropped from 251 in October 2017 to 231 in June 2018. An approved policy and procedures manual was still not in place even after two years of monitoring. There were 92 requirements that were set forth in the consent decree. Of those 92, HCDC remained non-compliant in 54 areas. Hinds County and Sheriff Mason have blatantly ignored their duties to protect inmates from harm as set forth in the consent Decree. During the four months between the September 2018 and January 2019 site visits, there were 30 inmate assaults reported at HCDC including multiple stab wounds and lacerations.

27. The Court Appointed Monitoring Report filed March 5, 2019, attached as Exhibit "F", shows no appreciable progress in three critical areas: staffing, security and the development of policies and procedures. The expert findings are set forth verbatim: "Over the past year and a half, the number of filled positions has fluctuated between 231 and 251. The current number of officers available represents a decrease of 13 since the previous site visit. ***Because of the staff shortage, none of the general housing units at the Raymond Detention Center (RDC) have an officer assigned inside so as to permit direct supervision of the inmates.*** In fact, on separate day shift inspections during the January 2019 site visit, no officers were on duty (other than the control room officer) in two out of three pods. In Housing Unit A1 (Juvenile) no officer was present. In Pod C, 1 ISO (Mental Health) and 4 ISO (Suicide Watch) were both covered by one officer. Technically, that is impossible, because inmates on suicide watch require constant supervision. On a subsequent inspection, the officer assigned to cover both of these posts was

located sitting in a chair in the control room. As noted in previous reports, because of the shortage of staff, and the fact that no officers are assigned to work inside the housing units, assaults and escapes (to retrieve contraband from outside the facility) are often not discovered as they occur, rather after the fact. Since the time of the last site visit there were 30 inmate assaults reported at RDC including multiple stab wounds and lacerations." The cell doors, a basic security requirement, are still malfunctioning: "Inoperative and malfunctioning security doors throughout the Jail System have always been a significant problem, as has been documented in detail in each of the previous Monitoring Reports. Unfortunately, instead of making progress toward rectifying this situation, Hinds County has allowed it to degenerate to a critical and dangerous level. Because so many of the housing unit entry slider doors at the RDC no longer work, there is only one set of keys available in each pod and the retrofitted safety vestibule (cage) doors are left open when officers enter the units, there is the potential for a large-scale security breach."

28. The latest Court Appointed Monitoring Report on June 27, 2019, attached as Exhibit "G", was filed just the day before a riot took place at the facility that led to several inmates being taken to hospitals. This report shows little to no progress in making improvements at the HCDC. The Monitor's report led the United States Department of Justice to file a motion seeking a contempt ruling against Hinds County, attached as Exhibit "H". The memorandum brief in support of the motion states that

> Defendants have missed the deadlines, failed to implement the Court-appointed Monitor's technical assistance recommendations, and provided no plan to comply with the Settlement. ***The Jail remains a violent, dangerous facility, with numerous assaults and a recent prisoner-on prisoner homicide.***

Ex. H @ p. 2. (emphasis supplied).

**1983 CAUSES OF ACTION:**
**EIGHTH AND FOURTEENTH AMENDMENT VIOLATIONS:**
**PROTECTION FROM HARM AND DANGEROUS CONDITIONS OF CONFINEMENT**

29.     Plaintiff incorporates all allegations set forth in Paragraphs 1 through 28 hereinabove.  Hinds County, acting by and through its elected and appointed officials, and Sheriff Mason acted with deliberate indifference in the allegations listed above. The Plaintiff incorporates herein all expert reports and DOJ pleadings attached as Exhibits B-H discussing the conditions of the HCDC.

30.     Defendant Hinds County, by and through Sheriff Mason and Doe Defendants 1-100 in their individual and official capacities, established customs, policies and procedures which directly and proximately caused the deprivation of the Plaintiff's constitutional rights as alleged herein.  Defendants were deliberately indifferent to the safety of Veal and other inmates housed at the HCDC.  As a result of these policies, the Defendants failed to protect Veal and created unconstitutional conditions of confinement.

31.     Such unwritten policies, customs and practices include, but are not limited to the following:

a.     inadequate and improper training, supervision and discipline of corrections officers;

b.     inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who practice, condone or use excessive force upon inmates, including the plaintiff in violation of their constitutional rights.

c.     inadequate and improper procedures, policies and practices for investigating improper activities by officers either through offender complaints of misconduct or through internally-initiated complaints or investigations.

d.     inadequate or improper procedures, policies and practices for identifying and taking appropriate action against officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary

actions, through a positive or early warning system designed to prevent the violation of inmates' rights.

e.       officers condoning and allowing inmates to fight;

f.       failing to protect inmates from harm;

g.       failing to prevent incidents of violence about which Hinds County employees had warning;

h.       failure to properly classify inmates;

i.       failure to have a protective custody system;

j.       maintaining a jail with inadequate security, such as properly locking cell doors and knowingly allowing inmates access to materials which they then turned into "shanks";

k.       failing to address the smuggling of contraband into the facility; and

l.       the chronic understaffing at the jail and hiring jailers with little to no training or supervision.

m.       Failing to conduct shakedowns to recover contraband.

n.       Failing to conduct safety checks in housing units or having officers assigned to housing units

32.       By exhibiting deliberate indifference to the substantial risk of harm Veal faced as a result of Hinds County's policies and practices set forth above, which resulted in his assault by other inmates and generally failing to protect Veal from harm, the Defendants, Hinds County and Sheriff Mason, violated Veal's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

## **EPISODIC ACTS OR OMISSIONS**

33.       Plaintiff incorporates all allegations set forth in Paragraphs 1 through 32 hereinabove.

34.     As demonstrated in the DOJ Reports and other expert findings and DOJ pleadinng contained in Exhibits B-H, Hinds County and Sheriff Mason maintained and operated a jail in such a manner as to cause the pervasive deprivation of inmates' constitutional rights in every respect and at every level.  Veal was forced to live in this jail and endure the action and inaction of its officials, as well as the jailers and jail staff acting in accordance with jail policies, customs and practices, under color of law, exhibiting callous and deliberate indifference, in depriving him of his rights guaranteed under the Constitution and laws of the United States.

35.     Hinds County and Sheriff Mason, as well as jailers and jail staff acting pursuant to jail policy, practice and customs, created and required inmates to live in a jail that was deficient in so many respects that it was not suitable for human confinement.  These actions resulted in the infliction of punishment on each of the inmates who were forced to live there, including Veal.

36.     As shown hereinabove, Hinds County and Sheriff Mason and/or other Doe Defendants adopted, implemented and permitted many other policies, practices and customs that deprived most, if not all, inmates, including Veal, of their right to be protected from harm and their right not to be punished during their pretrial confinement.  These included policies, customs and practices, whether written or unwritten, that were expressly announced, sanctioned and/or implemented by Sheriff Mason as final policymaker of the HCDC.  They also included policies, practices and customs which, though possibly not formally adopted, had become so widespread, well-settled and deeply imbedded in their application, use, employment and acceptance in the jail to have become the policies of these Defendants.

37.     The policies, practices and customs set forth in the preceding paragraph, as well as others which may come to light in the course of this litigation, resulted in numerous, repeated,

pervasive and persistent deprivations of inmates' rights to be protected from harm under both the Eighth and Fourteenth Amendments at the HCDC.  Veal was brutally assaulted by inmates due to the Defendant's unconstitutional policies, practices and customs.

38.    Jailers and jail staff, including the Doe Defendants, acted, or failed to act, in accordance with the official policies, customs and practices of Sheriff Mason and Hinds County, or at the direction of and with the approval of these officials, in depriving Veal of his rights as described herein.  The policies, practices and customs were moving forces in the action and inaction for jailers, and jail staff, and these jailers and jail staff acted with deliberate indifference to the rights, welfare and medical needs of and other constitutional rights of Veal.

39.    The deprivation of Veal's rights by Defendants, as described herein, directly and proximately caused Veal to suffer severe permanent physical and mental personal injury. Veal suffered excruciating pain, and extraordinary mental and emotional pain and anguish.

40     Plaintiff seeks recovery of all compensatory damages to which Veal is entitled. Plaintiff further seeks recovery of punitive damages from Sheriff Mason, and the individual Doe Defendants named herein (all in their individual capacities,) for the conduct in callous and reckless disregard for the rights, welfare and needs of Veal.

## RATIFICATION

41.    Hinds County, its policymakers, specifically Sheriff Mason, and the Doe Defendants 1-100 were advised about the Hinds County incident involving Veal. Hinds County, by and through its policymakers, specifically Sheriff Mason, ignored evidence of a widespread disregard of policies and procedures intended for the protection of inmates including Veal, and systemic deficiencies that violated the Veal's constitutional rights. Based on information and belief, not one officer, supervisor, or any other person was disciplined, considered for discipline,

or even retrained on policies intended for the protection of inmates. Instead, the policymakers approved the actions of the jailers and therefore ratified those actions.

42.     Through these acts and omissions of ratification, Hinds County's policymakers were deliberately indifferent to Veal's constitutional rights as set forth herein. A plaintiff can establish a municipal liability claim by showing that a final municipal policymaker approved an investigation that was "so inadequate as to constitute a ratification" of the misconduct. *Wright v. City of Canton*, 138 F. Supp.2d 955, 966 (N.D. Ohio 2001). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). An isolated decision by a municipal official that is not intended to control future decisions can nonetheless give rise to municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Hinds County ratified the actions of its employees and is therefore liable for Veal's injuries.

## PUNITIVE DAMAGES

43.     The Plaintiff incorporates all allegations set forth in Paragraphs 1 through 42 hereinabove.

44.     Sheriff Mason acted in complete disregard for the safety of Veal by acting in a manner as previously described herein.  Sheriff Mason's actions, in his individual capacity, warrant punitive damages to deter similar conduct in the future.

## PRAYER FOR RELIEF

Joanne Palmer, as guardian for Veal, respectfully prays for the following relief:

A.     Compensatory damages of, from and against the Defendants, in amount to be determined by this Court.

B.      Punitive damages of, from and against the Defendant Sheriff Mason, in his individual capacity in an amount to be determined by this Court.

C.      Payment of medical expenses.

D.      Reasonable attorney's fees and all costs of this court.

E.      Pre and post judgment interest.

F.      Such other general and special relief as appears reasonable and just in this cause.

RESPECTFULLY SUBMITTED, THIS the 10th day of July 2019.

LANDON VEAL, BY AND THROUGH HIS

GUARDIAN, JOANNE PALMER

BY:      */s/ Charles R. Mullins*_____
         CHARLES R. MULLINS

OF COUNSEL:

CHARLES R. MULLINS (MB# 9821)
COXWELL & ASSOCIATES, PLLC
Post Office Box 1337
Jackson, Mississippi  39215-1337
Telephone: (601) 948-1600
Facsimile: (601) 948-1600
chuckm@coxwelllaw.com

AAFRAM SELLERS (MS#100261)
Sellers & ASSOCIATES, PLLC
395 Edgewood Terrace Drive
Jackson, MS 39206
Telephone: (601) 352-0102
Facsimile: (601) 352-0106

*Attorney for Plaintiff*